# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEMBERS 1ST FEDERAL CREDIT UNION | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 09-CV-01171 |
| | : | |
| METRO BANK AND METRO BANCORP, INC. | : | HONORABLE YVETTE KANE |
| | : | |
| Defendants. | : | |

## DEFENDANTS METRO BANK AND
## <u>METRO BANCORP, INC.'S PROPOSED JURY INSTRUCTIONS</u>

Pursuant to the Case Management Order, incorporating Rule 51.1 of the United States District Court for the Middle District of Pennsylvania Rules of Court, Defendants Metro Bank and Metro Bancorp, Inc. (collectively hereinafter "Metro Bank"), by and through its undersigned counsel respectfully submit the following proposed jury instructions.

Metro Bank reserves the right to supplement or amend these proposed jury instructions prior to or at any charging conference held by the Court in this case.

Respectfully submitted,

Date: September 27, 2010

s/J. Anthony Lovensheimer
Paul J. Kennedy (PA 39291)
Thomas E. Zemaitis (PA 23367)
J. Anthony Lovensheimer (PA 209822)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA   19103-2799
Phone:        (215) 981-4000
Fax:          (215) 981-4750
Email:   kennedyp@pepperlaw.com
             zemaitis@pepperlaw.com
             lovensheimera@pepperlaw.com

Brian P. Downey (PA 59891)
Frederick Alcaro (PA 91555)
PEPPER HAMILTON LLP
Suite 200, 100 Market Street
P.O. Box 1181
Harrisburg, PA 17108-1181
Phone:        (717) 255-1155
Fax:          (717) 238-0575
Email:   downeyb@pepperlaw.com
             alcarof@pepperlaw.com

*Attorneys for Defendants Metro Bank
and Metro Bancorp, Inc.*

**Proposed Jury Instruction No. 1**

## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS

The plaintiff in this case, Members 1st Federal Credit Union (I will refer to plaintiff as "Members 1st" in these instructions), seeks to recover money damages from the defendants Metro Bank and Metro Bancorp, Inc. (I will refer to defendants as "Metro Bank") for what Members 1st claims to be trademark infringement and unfair competition relating to the M1ST trademark used by Members 1st.  Metro Bank denies that its use of the Metro Bank M trademark infringes the M1ST trademark or otherwise constitutes unfair competition.

In my instructions, I will identify types of facts you are to consider in deciding whether Metro Bank is liable to Members 1st for trademark infringement or unfair competition.  You, the jury, are the judge of those facts.  These facts are relevant to whether Metro Bank is liable for:

1.  Infringing Members 1st's federal and common law trademark rights in the M1ST trademark by using the Metro Bank M trademark in a manner likely to cause confusion among consumers; and/or

2.  Unfairly competing with Members 1st by using the Metro Bank M trademark in a manner likely to cause confusion as to the origin or quality of Members 1st's services.

Source:	Adapted from 4-86A MODERN FEDERAL JURY INSTRUCTIONS CIVIL P 86A.02; 15 U.S.C. §§ 1114(1)(a) and 1125(a).

## Proposed Jury Instruction No. 2

## <u>TRADEMARK DEFINITION</u>

Now I would like to give you more information to help you understand what a trademark is.  A trademark is any word, name, symbol, device, or any combination thereof used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods, even if that source is generally unknown.  To be clear, the term "person" also includes business entities such as Members 1st and Metro Bank.

A service mark is any word, name, symbol, device, or any combination thereof used by a person to identify and distinguish that person's services from those of others and to indicate the source of the services, even if that source is generally unknown

Both parties in this case provide services; therefore, the marks they use are actually "Service Marks."  However, since the law of Trademarks is the same as the law for Service Marks, I will use "Trademarks," which is the more common term.

<u>Source</u>:      15 U.S.C. § 1127.

**Proposed Jury Instruction No. 3**

**TRADEMARK INFRINGEMENT CLAIM –
<u>ELEMENTS AND BURDEN OF PROOF</u>**

The first claim you must decide is Members 1st's claim for trademark infringement.

To prevail on this claim, Members 1st must prove each of the following elements by a preponderance of the evidence:

1.  That Members 1st's M1ST trademark is a valid, protectable trademark;

2.  That Members 1st owns the M1ST trademark as a trademark; and,

3.  That Metro Bank's actual use of its Metro Bank M Mark is likely to cause confusion about the source of the services offered by the parties among a significant number or ordinary purchasers.

One way for a plaintiff to prove trademark validity is to show that the pertinent trademark is registered by the United States Patent and Trademark Office.  A plaintiff may present that Certificate of Registration as evidence of the validity and protectability of the trademark and of the certificate holder's ownership of the trademark covered by that Certificate.  Members 1st has presented a Certificate of Registration and that Certificate is conclusive evidence of the first two elements.  As a result, the parties do not dispute the first two elements and you must treat them as proven.

Thus, the only question before you is the third element, namely whether Metro Bank's use of the Metro Bank M trademark is likely to cause confusion as to the source of the services provided by the parties among a significant number of ordinary purchasers.

<u>Source:</u>  Adapted from 4-86A MODERN FEDERAL JURY INSTRUCTIONS-CIVIL P 86A-9; 15 U.S.C. §§ 1114(1)(a) and 1125(a)(1)(A).

**Proposed Jury Instruction No. 4**

## STATUTORY BASES FOR LIKELIHOOD OF CONFUSION TEST

Members 1st has also claimed that Metro Bank's use of the Metro Bank M trademark constitutes unfair competition under the Federal Trademark Act.  As I will explain to you, despite the different statutory bases for Members 1st's claims, the standards for recovery on the trademark infringement and unfair competition claims under the Federal Trademark Act are identical, with the exception of the requirement of a federal trademark registration for relief for trademark infringement.

The action for the infringement of a federal trademark registration requires Members 1st to demonstrate that Metro Bank, without Members 1st's consent, is (and I am quoting the statute here):

"us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."

Members 1st's unfair competition claim includes a more explicit likelihood of confusion test (and again, I'm quoting the statute):

"Any person who, or in connection with any goods or services, or any container for goods uses in commerce any word, term, name symbol, or device, or

any combination thereof, or any false designation of origin, false or misleading

representation of fact which—

   (A) is likely to cause confusion, or to cause mistake, or to deceive as

to the affiliation, connection, or association of such person with another person, or

as to the origin, sponsorship, or approval of his or her goods, services, or

commercial activities by another person . . .

   shall be liable in a civil action by any person who believes that he or

she is or is likely to be damaged by such act."

   Despite the different statutory language for Members 1st's two claims

under the Federal Trademark Act, the standard used to assess claims under the Act

are identical.  And that standard is the likelihood of confusion.

Source:  2 Anne Gilson LaLonde, Gilson on Trademarks § 5.01[2][a] (2007); *Id.* at
5-12.1 & n.10 (2007) (quoting 15 U.S.C.§ 1114(1)); *Id.* at 5-13 & n.11 (quoting 15
U.S.C. § 1125(a)(1)(A)); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
237 F.3d 198, 210 (3d Cir. 2000) (Third Circuit "measure[s] federal trademark
infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. §
1125(a)(1)(A), by identical standards."

**Proposed Jury Instruction No. 5**

**TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION CLAIMS**

If, after you consider all of the evidence, you find that Members 1st has failed to prove a likelihood of confusion by a preponderance of the evidence, then Metro Bank is not liable and your verdict must be for Metro Bank on Members 1st's trademark infringement and unfair competition claims.  If, on the other hand, you find that Members 1st has proved likelihood of confusion by a preponderance of the evidence, then your verdict must be for Members 1st on these claims and you will then consider the issue of damages which I will discuss later.

Source:  Adapted from 4-86A MODERN FEDERAL JURY INSTRUCTIONS-CIVIL P 86A-9; 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A).

**Proposed Jury Instruction No. 6**

**<u>LIKELIHOOD OF CONFUSION DEFINITIONS</u>**

When making your determination of "likelihood of confusion," it may help

for me to give you some definitions.

"Likelihood" means "the quality or fact of being likely or probable,"

"something that is likely, a probability, a ground of probable inference, an

indication, sign."

And "Probable" means "that may in view of present evidence be

reasonably expected to happen, or to prove true; likely."

The relevant inquiry therefore is not whether consumer confusion is a

"possibility," but whether confusion is "likely."

<u>Source:</u>  *Oxford English Dictionary* (2d ed.) Vols. VIII & XII (Clarendon Press –
Oxford), Vol. VIII at 948 and Vol. XII at 535; *A&H Sportswear*, 237 F.3d at 222;
*see also Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 195 (3d
Cir. 1990).

**Proposed Jury Instruction No. 7**

## LIKELIHOOD OF CONFUSION FACTORS

You may consider any of the following factors in determining whether the Metro Bank's use of the Metro Bank M trademark is likely to cause confusion concerning the source of the services provided by Members 1st or Metro Bank:

(1)  The degree of similarity between the Members 1st's M1ST trademark and the Metro Bank M trademark;

(2)  The strength of Members 1st's M1ST trademark;

(3)  The price of the goods and other factors indicative of the care and attention expected of consumers when selecting and using the services provided by Members 1st and Metro Bank;

(4)  The length of time Metro Bank has used the Metro Bank M trademark without evidence of actual confusion arising;

(5)  The intent of Metro Bank in adopting the Metro Bank M trademark;

(6)  Any evidence of actual consumer confusion;

(7)  Whether the services provided by Members 1st under the M1ST trademark and by Metro Bank under the Metro Bank M trademark are marketed through the same channels of trade and advertised through the same media;

(8)  The extent to which the targets of the parties' sales efforts are the same;

(9)  The relationship of the services in the minds of consumers; and,

(10) Other facts suggesting that the consuming public might expect Members 1st to provide its services in the Metro Bank's market, or that Members 1st is likely to expand into that market.

The weight to be given to each of these factors is up to you to determine.  No particular factor or number of factors is required to prove likelihood of confusion.

I will now go over each of these factors more specifically:

Source:  As to factors, *see Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).  As to weight to be given factors, *see Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 280 (3d Cir. 2001).

A.  <u>**Similarity of the Trademarks**</u>

In assessing the similarity of the trademarks, the proper test is not a side-by-side comparison.  Instead, you must consider whether the Members 1st M1ST trademark and the Metro Bank M trademark create the same overall impression when viewed separately.  The two trademarks create the same overall impression when the average consumer, on encountering one of the trademarks in the marketplace, and having a general recollection of the other, would likely confuse or associate the two.

In assessing the overall impression created by the two trademarks, you must consider the sight, sound, and meaning of the Members 1st M1ST trademark and the Metro Bank M trademark.

The proper test is not whether there is some confusing similarity between sub-parts of the two trademarks; the overarching question is whether the trademarks, viewed in their entirety, are confusingly similar.

<u>Source:</u>  *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 713 (3d Cir. 2004); *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 474-478 (3d Cir. 1994); *see also A & H Sportswear*, 237 F.3d at 217.

**B.**    <u>**Strength of the Members 1st M1ST Trademark**</u>

Stronger and more distinctive trademarks receive greater protection under the Trademark Act, so you should consider the strength and distinctiveness of the M1ST mark in assessing the likelihood of confusion.

To determine strength and distinctiveness, you should consider (1) the inherent features of the Members 1st M1ST trademark contributing to its distinctiveness or conceptual strength and (2) the evidence of the commercial strength or marketplace recognition of the Members 1st M1ST trademark.

<u>Distinctiveness of Marks</u>

Trademark law provides great protection to distinctive or strong trademarks.  Conversely, trademarks that are not as distinctive or strong are called "weak" trademarks and receive less protection from infringing uses.

The more arbitrary the mark, the stronger it is considered to be.  Such marks involve the arbitrary, fanciful, or fictitious use of a word to designate the source of a product or service such as "apple" when used by a company to identify the personal computers sold by that company.

As a mark becomes more suggestive of the service it represents, it becomes less distinctive.  Suggestive trademarks imply some characteristic or quality of the product or service to which they are attached.  For example, when

"apple" is used in the trademark "Apple-A-Day" Vitamins, it is being used as a suggestive trademark.

Trademarks are descriptive when they directly identify or describe some aspect, characteristic, or quality of the product or service to which they are affixed in a straightforward way.  For instance, the word "apple" is descriptive when used in the trademark "CranApple" to designate a cranberry-apple juice because it directly describes ingredients of the juice.  Descriptive marks are weaker than arbitrary and suggestive marks.

Commercial Strength

The strength of the Members 1st M1ST trademark may also be determined by the degree of marketplace recognition, or commercial strength that the Members 1st M1ST trademark has achieved.

The mere fact Members 1st is using the M1ST trademark, or that Members 1st began to use it before Metro Bank began to use its M trademark, does not establish strength in the marketplace.  Similarly, the fact that the Members 1st M1ST trademark may be unique does not make it a strong mark.  Nor is strength determined by the popularity of the services provided by Members 1st.

In determining the degree of marketplace recognition associated with the Members 1st M1ST trademark, it is appropriate for you to consider any evidence relating to:

     a.  The length and manner of its use;

     b.  The nature and extent of advertising and promotion;

     c.  Sales volume;

     d.  Other efforts made by Members 1st to promote the connection

between the M1ST trademark and the services provided by Members 1st;

     e.  Consumer surveys;

     f.  Consumer testimony as to the identity of the source of services

advertised displaying the M1ST trademark; and,

     g.  Evidence of copying by others.

     Finally, use by third parties of marks that are identical or similar to the

Members 1st M1ST trademark in the banking business, or even in other businesses

can also weaken the strength of that trademark.

<u>Source:</u>  Adapted from Model Civ. Jury Instr. 9th Cir. § 15.17 (2007) and from 4-86A MODERN FEDERAL JURY INSTRUCTIONS-CIVIL P 86A-9; *Kos Pharms.*, 369 F.3d at 715; *A&H Sportswear*, 237 F.3d at 222-224; *see also Park n Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189. 105 S. Ct. 658, 83 L. Ed. 2d 582 (1985); *Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 123 (3d Cir. 2004) (finding that "as a general rule, widespread use of even a distinctive mark may weaken the mark"); *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 654 (10th Cir. 1996) (recognizing "the well-established principle that extensive third-party use of the disputed term indicates that the term itself deserves only weak protection").

## C.  <u>Consumer Care in Making Purchasing Decisions</u>

The third factor in determining the likelihood of confusion focuses on "the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase."  Inexpensive goods require consumers to exercise less care in their selection than expensive ones.  When consumers exercise heightened care in evaluating the relevant products or services before making purchasing decisions, there is generally less likelihood of confusion.  Since Members 1st and Metro Bank both offer banking and financial services, you should consider the degree of care that would normally be exercised by the ordinary consumer of retail banking services.

<u>Source:</u>  *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 363-64 (3d Cir. 2007) (citing *Lapp*, 721 F.2d at 463 and *Versa Prods. Co. v. Bifold Co.*, 50 F.3d 189, 204-05 (3d Cir. 1995)); *Checkpoint Sys.*, 269 F.3d at 284-285.

**D.  Length of Use Without Actual Confusion**

When parties have used similar marks for a sufficient period of time without evidence of consumer confusion about the source of the products, there is an inference that future consumers will not be confused either.  Therefore, you can consider the length of time that Metro Bank has been using the Metro Bank M trademark along with any evidence of actual confusion that might also be presented.

Source:  *Fisons*, 30 F.3d at 476 (citing *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1230 (3d Cir. 1978)).

**E.  Metro Bank's Intent**

Evidence of a defendant's intent is not a prerequisite for finding a Trademark Act violation; however, evidence of intentional, willful and admitted adoption of a trademark closely similar to the existing trademark weighs in favor of finding a likelihood of confusion.

In evaluating this factor, you must consider whether Metro Bank chose the Metro Bank M trademark with the intention of confusing consumers, and thereby capitalizing on any goodwill associated with the Members 1st M1ST trademark.  A defendant's intent to confuse consumers will indicate a likelihood of confusion only if that intent is demonstrated by the purposeful manipulation of the defendant's trademark to resemble the plaintiff's trademark.

Source:  *Kos.*, 369 F.3d at 721; *Checkpoint Sys.*, 269 F.3d at 286; *A & H Sportswear*, 237 F.3d at 225-26.

## F.  Actual Confusion

Evidence of actual confusion is not required to prove likelihood of confusion.  However, evidence of actual confusion may be highly probative of the likelihood of confusion.

On the other hand, minimal evidence of actual confusion does not automatically support a finding of a likelihood of confusion.  In evaluating any evidence of actual confusion, you should also consider the number of opportunities for confusion.

In evaluating the reliability of any evidence of actual confusion, you may consider the source of that evidence and the motivations of the persons collecting it.

Source:  *Checkpoint*, 269 F.3d at 291 (citing *Versa Prods.*, 50 F.3d at 205; J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition, § 23:14 (2009) ("[A]n isolated instance of confusion does not prove probable confusion. To the contrary, the law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." (quoting *Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr.*, 103 F.3d 196 (1st Cir. 1996)); *Fisons*, 30 F.3d at 476 ("[W]hile evidence of actual confusion would strengthen plaintiff's case, it is not essential.")); *Opticians Ass'n of America v. Indep. Opticians of America*, 920 F.2d 187, 195 (3d Cir. 1990); *Versa Prods.*, 50 F.3d at 205; *Citizens Financial Group, Inc. v. Citizens National Bank*, 383 F.3d 110, 122 (3d Cir. 2005) (citing *Checkpoint Sys.*, 269 F.3d at 298 ("the District Court properly took into account the potential bias of the Checkpoint System's employees who testified [regarding actual confusion]."); *A & H Sportswear*, 237 F.3d 198, 227 ("The District Court, while not explicitly discrediting this evidence, viewed it with great skepticism, given the interested sources and the inability to cross-examine the supposedly confused individuals.").

**G.  Channels of Trade and Advertising**

The greater the similarity in advertising and marketing campaigns of Members 1st and Metro Bank for their respective services offered under their respective trademarks, the greater the likelihood of confusion.

In applying this factor, you may consider the evidence of the parties' respective advertising and media campaigns, including the trade exhibitions they may have attended, the publications and other media used in advertising their services, as well as any other evidence of the parties' advertising and marketing channels.

Source:  *Checkpoint Sys.*, 269 F.3d at 288-89 (quoting *Acxiom Corp. v. Axiom, Inc.*, 27 F. Supp. 2d 478, 502 (D. Del. 1998)).

## H.  Targets of Sales and Advertising Efforts

In assessing the likelihood of confusion, you may consider whether Members 1st and Metro Bank target their sales efforts to the same consumers. When parties target their sales efforts to the same consumers, there is generally a stronger likelihood of confusion.

Source:  *Checkpoint Sys.*, 269 F.3d at 289.

**I.  <u>Relationship of the Parties' Services in the Minds of Consumers</u>**

In assessing the likelihood of confusion, you may also consider whether the services offered by Members 1st and Metro Bank are similar enough that a customer would assume both services were offered by the same source. When considering this factor, you should look at how similar, or closely related, the services are.

If the services provided by the parties under their respective trademarks fall under the same general product category but operate in distinct niches, they will probably not be closely related.  The question is whether the consumer might reasonably conclude that one company would offer both of these related products.

In making this determination you should look at the nature of the services or the relevant market, the practices of other companies in the relevant fields, and any other circumstances that bear on whether consumers might reasonably expect both services to have the same source.

<u>Source:</u>  *Kos.*, 369 F.3d at 723-724; *Checkpoint Sys.*, 269 F.3d at 286; *Fisons*, 30 F.3d at 481.

**J. Other Facts Suggesting That the Consuming Public Might Expect the Prior Owner to Manufacture Both Products, or Expect the Prior Owner to Manufacture a Product in the Defendant's Market, or Expect that the <u>Prior Owner is Likely to Expand Into Defendant's Market.</u>**

In assessing the likelihood of confusion, you may also consider evidence that Members 1st has actually moved into the same market as Metro Bank, as well as other facts suggesting that the consuming public might expect Members 1st to offer its services in Metro Bank's market, or that Members 1st is likely to expand into that market.

In evaluating this factor, you may consider evidence that other banks provide these services in both markets, as well as evidence that the services at issue are such that the consuming public might find it natural for one company to do so.

<u>Source:</u>  *Checkpoint Sys.*, 269 F.3d at 290; *Lapp*, 721 F.2d at 463.

**Proposed Jury Instruction No. 8**

**<u>MEMBERS 1ST'S DAMAGES</u>**

If you find a likelihood of confusion and decide in favor of Members 1st on the question of liability, then you should consider whether to award monetary damages to Members 1st, and if so, the amount of monetary damages to award.  This could include damages that Members 1st sustained because of Metro Bank's trademark infringement and unfair competition, and profits that Metro Bank made resulting from its use of the Metro Bank M trademark.  I will provide further instructions on these issues below.

If you do not find a likelihood of confusion and decide in favor of Metro Bank on the question of liability, then you should not consider the issue of damages.

<u>Source:</u>  15 U.S.C. §§ 1117(a)(1) and (2).

**Proposed Jury Instruction No. 9**

**TRADEMARK DAMAGES, ACTUAL DAMAGES (15 U.S.C. § 1117(A)(2))**

If you find for Members 1st on Members 1st's trademark infringement and unfair competition claims and you also find that Metro Bank had statutory notice or actual notice of the Members 1st M1ST trademark, you must determine Members 1st's actual damages resulting from Metro Bank's trademark infringement and unfair competition, if any.  Members 1st has the burden of proving its damages by a preponderance of the evidence.

In assessing Members 1st's actual damages, you should consider whether Metro Bank's infringement of the Members 1st M1ST trademark caused the following:

(1) any injury to Members 1st's reputation;

(2) any injury to the services of Members 1st or Members 1st's goodwill, including injury to the Members 1st's general business reputation -- the goodwill of a company is an intangible business value that reflects the basic human tendency to do business with merchants who offer products or services of the type and quality the customer desires and expects;

(3) any loss of sales by Members 1st; and

(4) any loss of profits by Members 1st.

If you find that the evidence before you is insufficient to show that Members 1st has sustained any actual damages, then you may return a verdict for Members 1st on trademark infringement and unfair competition and fix the amount of the actual damages in a nominal sum such as one dollar.

Source:  Adapted from 4-86A MODERN FEDERAL JURY INSTRUCTIONS-CIVIL P 86A-23; 15 U.S.C. § 1117(a).

**Proposed Jury Instruction No. 10**

**TRADEMARK DAMAGES, DEFENDANTS' PROFITS (15 U.S.C. § 1117(a))**

In addition to actual damages, Members 1st may be entitled to profits earned by Metro Bank that are attributable to its use of the Metro Bank M trademark, if any.  Profit is determined by deducting expenses from gross revenue. Gross revenue is all of the money Metro Bank received that is attributable to its use of the Metro Bank M trademark.  It is not enough for Members 1st to produce evidence of Metro Bank's total revenues.  Instead, it must prove by a preponderance of the evidence what portion of those revenues is attributable in whole or in part to Metro Bank's use of the Metro Bank M trademark.

Once Members 1st establishes Metro Bank's total gross profits attributable in whole or in part to the use of the Metro Bank M trademark, Metro Bank has the burden of proving the expenses it incurred in generating those profits and the portion of those profits that are attributable to factors other than use of the infringed trademark.  Expenses are all costs incurred in producing the gross revenue, and, any expenses proven by Metro Bank must be deducted from the total profits.

Metro Bank also has the burden of proving the portion of the total profits that are attributable to factors other than use of the infringed trademark.  If you find that any portion of the profit from Metro Bank's services is attributable to

factors other than the use of the Metro Bank M trademark, you must deduct that portion from the total profit to be awarded to Members 1st.

You may not include in any award of profits any amount that you already awarded Members 1st as lost profits in determining actual damages.  In other words, if you found that Members 1st is entitled to actual damages in the form of profits it lost, then you may not also award Members 1st the profits earned by Metro Bank that would otherwise have been earned by Members 1st.

Source:  Adapted from 4-86A MODERN FEDERAL JURY INSTRUCTIONS-CIVIL P 86A-24; 15 U.S.C. § 1117(a); *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 242 (3d Cir. 2003) (The plaintiff seeking an accounting of profits is "only entitled to those profits attributable to the unlawful use of its mark.")(quoting *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 350 (5th Cir. 2002)); *see also Accu Personnel, Inc. v. Accustaff, Inc.*, 846 F. Supp. 1191, 1215 (D. Del. 1994) (granting summary judgment as to an accounting of defendant's profits where plaintiff failed to present evidence of defendant's profits "gained as a result of the alleged acts of infringement").

**Proposed Jury Instruction No. 11**

**<u>INTENTIONAL TRADEMARK INFRINGEMENT</u>**

If you find that Metro Bank infringed the Members 1st M1ST trademark, you must also determine whether Metro Bank used the Metro Bank M trademark intentionally, knowing it was an infringement to do so.  Metro Bank acted intentionally if Members 1st can prove by a preponderance of the evidence that Metro Bank knew that it was infringing Members 1st's M1ST Mark or if it acted with indifference to Members 1st's trademark rights.

<u>Source:</u>  Adapted from 4-86A MODERN FEDERAL JURY INSTRUCTIONS-CIVIL P 86A-25; 15 U.S.C. § 1117(b).

## <u>CERTIFICATE OF SERVICE</u>

I, J. Anthony Lovensheimer, hereby certify that a true and correct

copy of the foregoing Defendants Metro Bank and Metro Bancorp, Inc.'s Proposed

Jury Instructions were served via electronic mail on counsel for Members 1st

Federal Credit Union at the following address:

> Adam E. Gersh, Esquire
> Flaster/Greenberg P.C.
> Commerce Center
> 1810 Chapel Avenue West
> Cherry Hill, NJ 08002
> (856) 382-2246
> (856) 661-1919 (fax)
> Adam.Gersh@flastergreenberg.com

Date:  September 27, 2010          /s/ J. Anthony Lovensheimer
                                   J. ANTHONY LOVENSHEIMER