IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MEMBERS 1ST FEDERAL CREDIT UNION :<br>    Plaintiff, :<br>:<br>v. :<br>:<br>METRO BANK, METRO BANCORP, INC., :<br>COMMERCE BANK/HARRISBURG, :<br>PENNSYLVANIA COMMERCE :<br>BANCORP, INC., REPUBLIC FIRST :<br>BANK, and REPUBLIC FIRST BANCORP, :<br>INC., :<br>    Defendants : | Civil Action No. 1:09-cv-1171<br><br>(Chief Judge Kane) |

## MEMORANDUM

On October 22, 2010, the Court entered an order granting in part and denying in part Defendants' motion for partial summary judgment on the issue of damages. (Doc. No. 70.) The Court held that because Plaintiff failed to contest the Defendants' motion as to actual damages and treble damages, summary judgment would be granted on those issues. (Id. at 6-9.) Further, because Plaintiff had not introduced evidence regarding Defendants' gross sales, the Court granted Defendants' motion as to the disgorgement of Defendants' profits. (Id. at 9-10.) The Court denied Defendants' motion on the issue of attorneys' fees. (Id. at 10-11.) On October 28, 2010, Plaintiff filed a motion for partial reconsideration of the Court's order regarding the disgorgement of profits. (Doc. No. 71.) For the reasons stated more fully herein, the Court will grant Plaintiff's motion.

I.  **STANDARD OF REVIEW**

A motion for reconsideration is a device of limited utility. Its purpose is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v.

1

Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is appropriate in instances where the court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Rohrbach v. AT & T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in part on other grounds on reconsideration, 915 F. Supp. 712 (M.D. Pa. 1996) (citation omitted). It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citation omitted).

## II.   DISCUSSION

At summary judgment the Court determined that Defendants had pointed to the absence of evidence supporting an accounting of profits. The Court concluded that because Plaintiff had produced no evidence regarding Defendants' profits or sales it failed to meet its burden under Section 35 of the Lanham Act. (Doc. No. 70 at 10.) Plaintiff argues reconsideration of this

2

Court's order granting in part Defendants' motion for summary judgment is warranted because it was undisputed that Plaintiff could produce evidence of Defendants' gross sales. (Doc. No. 72 at 1-2.) Defendants dispute this argument, and in the alternative argue that even if Plaintiff had produced evidence of Metro Bank's profits or sales, the evidence produced could not be sufficient to award an accounting of profits. (Doc. No. 74-1.)

### A. Whether the Evidence in Question Was Undisputed

In a motion for summary judgment, where the party opposing a motion for summary judgment bears the ultimate burden of proof on an issue at trial, the moving party discharges its burden by "pointing out" to the court that there is an absence of evidence supporting the nonmoving party's claim. Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004). The non-moving party then must identify evidence of record that creates a genuine issue of material fact if it is to survive summary judgment. Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988). Because evidence was not submitted at summary judgment regarding the amount of Defendants' gross profits and sales, summary judgment on that issue would only be improper where Plaintiff was not obligated to produce such evidence because it was not in dispute.

At summary judgment the Court relied on the following statements by Defendants in their Statement of Facts (Doc. No. 49), Brief in Support of Summary Judgment (Doc. No. 50), and Reply Brief in Support of Summary Judgment (Doc. No. 60) to conclude that there was a dispute regarding whether Plaintiff could establish Defendants' gross profits or sales:

> 1. "Metro Bank directed an interrogatory to Plaintiff requesting Plaintiff to 'identify any and all damages, costs, fees or otherwise that Plaintiff seeks, specify how Plaintiff calculated its alleged damages, costs and fees, and set forth with specificity the factual basis for each element

3

of damages.' (Exh. H, Pl.'s Answers and Objections to Defs.' Interrogs., Interrog. No. 12). Plaintiff responded that 'Members 1st's [sic] directs defendants to the documents produced in response to defendants' first set of requests for production of documents, which include evidence of actual confusion and damages that Members 1st suffered as a result. By way of further answer, Members 1st's investigation into its monetary damages continues.' Id. Plaintiff never supplemented this response." (Doc. No. 49 ¶¶ 54-55.)

2. "Members 1st's claim for an accounting fails because it has not adduced any evidence to show that Defendants profited from the use of the Metro M Mark, let alone the amount of those profits." (Doc. No. 50 at 21.)

3. "Moreover, even before addressing the Banjo Buddies factors, Members 1st must also establish the existence of profits attributable to the alleged infringement." (Doc. No. 60 at 5.)

4. "Members 1st's claim to an accounting of profits fails on a more basic element than willfulness: It has adduced no evidence to establish the existence of Metro Bank's profits since first re-opening its branches under the Metro M Mark in June 2009, let alone that Metro Bank's profits, if any, are attributable to the alleged unlawful use of the Metro M Mark. On this ground alone – and irrespective of willfulness – Members 1st is not entitled to an accounting of Metro Bank's profits." (Doc. No. 60 at 5-6.)

5. "Given that Members 1st has produced no evidence to establish that Metro Bank's profits, if any, since launching the Metro M Mark in June 2009 resulted from Metro Bank's use of the Metro M Mark, Metro Bank is entitled to summary judgment on the claim for an accounting of profits." (Doc. No. 60 at 7.)

Plaintiff now argues that these statements by Defendants do not in fact indicate a dispute on the issue of whether Plaintiff could establish gross sales or profits. (Doc. No. 75 at 4-8.) Indeed, at summary judgment, Plaintiff argued that "Metro Bank does not dispute that Members 1st can meet" its burden to prove Defendants' sales under the Lanham Act. (Doc. No. 57 at 16.)

Upon further review of the record, the Court concludes Defendants' statements did not in fact question whether Plaintiff could produce evidence of Defendants' gross sales. The section

in Defendants' statement of facts in which Defendant challenges Plaintiff's ability to produce evidence of monetary damages is preceded by the heading: "Members 1st Has Offered No Evidence Of Actual Damages." (Doc. No. 49.) The term "profit" is not included in the statement of facts, nor is any unambiguous statement questioning Plaintiff's ability to produce evidence of Defendants' profits. (Id.) Further, references to the absence of evidence of profits in Defendants' briefs are accompanied by reference to Plaintiff's inability to demonstrate a link between Defendants' profits and the alleged breach. (Doc. Nos. 50 at 21, 60 at 5, 60 at 5-6, 60 at 7.) This suggests that Defendants were in fact challenging Plaintiff's ability to prove that the profits were caused by the alleged infringement, not Plaintiff's ability to prove Defendants' gross profits. Perhaps most significantly, the evidence at issue here is a Securities and Exchange Commission filing, which is a matter of public record and which Defendants had produced in discovery. (Doc. No. 71-2 ¶ 3.) As such, Defendants cannot raise a serious challenge to the facts contained therein.

Although the Court is satisfied that its initial order granting in part Defendants' motion for summary judgment was supported by the record, the Court concludes that it misapprehended Defendants' arguments on the issue of a disgorgement of profits. This is precisely the circumstance Rule 59 was designed to address. Rohrbach, 902 F. Supp. at 527, vacated in part on other grounds on reconsideration, 915 F. Supp. 712. Therefore, the Court concludes it would constitute a manifest injustice to not reconsider its order in light of the evidence put forward by Plaintiff in its motion for relief under Rule 59. In light of the evidence put forth by Plaintiff, the arguments in the brief become clear, and the Court can no longer conclude that the evidence produced in Plaintiff's motion to reconsider (Doc. No. 71-2, Ex. A) was disputed by the parties.

5

Rather, the Court concludes Defendants were actually disputing Plaintiff's ability to produce evidence of gross sales that were attributable to Defendants' alleged infringement. Therefore, the Court will reconsider its previous order in light of the fact that the evidence in Defendants' SEC filing was undisputed.

### B. Summary Judgment on the Accounting of Profits

The Lanham Act permits an award of profits upon a finding of trademark infringement when such an award is supported by "the principles of equity." 15 U.S.C. § 1117(a). The Third Circuit has cited six factors to be considered when determining whether equity supports disgorging an infringer's profits, namely:

> (1) Whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 175 (3d Cir. 2005). In addition, although "willful" conduct by the infringer is no longer required for the disgorgement of profits in the Third Circuit, it is an equitable factor that may be considered along with the Banjo Buddies factors. See Gucci Am., Inc. v. Daffy's, Inc., 354 F.3d 228, 242 (3d Cir. 2003).

If the equitable factors support an accounting of profits, the Lanham Act provides for an award of profits if Plaintiff proves Defendants' sales. 15 U.S.C. § 1117(a); see also Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 64 (1st Cir. 2008) (finding tax returns indicating gross sales over the relevant period satisfied plaintiff's burden); Banjo Buddies, 399 F.3d at 176 (finding a reporting of total sales of the product in question satisfied plaintiff's burden); Restatement (Third) of Unfair Competition § 37 (1995) ("The plaintiff has the burden

6

of proving the defendants' gross profits with reasonable certainty; mathematical precision is not required."). Once Plaintiff has established Defendants' gross sales, the burden shifts to Defendants to show that some of those sales were unrelated to and unaided by any unlawful use of a mark. 15 U.S.C. § 1117(a).

For the purposes of this motion for summary judgment, the Court must assume that infringement has been shown. Therefore, at this stage Defendants bear the burden of establishing that there is no question of material fact regarding whether an award of profits is supported by the equitable factors in Banjo Buddies, 399 F.3d at 175. If Defendants cannot meet this burden, summary judgment will still follow if they establish that there is no question of material fact regarding whether Plaintiff's are able to meet their statutory burden under the Lanham Act. In its October 22, 2010 order, the Court concluded that a ruling on the equitable factors would be premature at this stage. (Doc. No. 70 at 9.) The Court is unable to discern any reason to disturb that conclusion.[1]

As such, summary judgment will only be granted if Defendants are able to establish that the undisputed evidence produced by Plaintiff's is insufficient to satisfy the Lanham Act's requirement that Plaintiff "prove [Defendants'] sales only." 15 U.S.C. § 1117(a). In support of this position, Defendants advance three arguments: (1) the documents do not establish what portion of those profits were attributable to the unlawful use of Defendants' mark; (2) the documents only show Defendants' income, not Defendants' sales; and (3) the documents show Defendants suffered losses since the introduction of the Metro M, not profits. The Court will

---

[1] As Plaintiff adequately establishes in its brief in opposition, there is ample evidence in the record to demonstrate a material dispute on each of the six Banjo Buddies factors. (Doc. No. 57 at 15-22.)

consider these arguments in turn.

In support of its first argument, Defendants rely heavily on Gucci Am., Inc. v. Daffy's Inc., 354 F.3d 228 (3d Cir. 2003). (Doc. No. 74-1 at 8-11.) Their argument is similar to the argument advanced by the defendant in Venture Tape, 540 F.3d 56. In Venture Tape, the defendant argued that the "only possible enrichment" to defendant from the use of plaintiff's mark was in the sales of certain products, specifically tape and foil, which defendant contended amounted to less than one percent of its total sales. Id. at 63-64. As such, it contended that an accounting of profits was not warranted because the plaintiff's only evidence of sales was defendant's tax returns, which included all of defendant's sales, not merely the infringing ones. Id. The First Circuit Court of Appeals rejected this argument, holding that "once the plaintiff has shown direct competition and infringement, the statute places the burden on the infringer to show the limits of the direct competition." Id. at 63 (quoting Tamko Roofing Prods., Inc. v. Ideal Roofing Co., Ltd., 282 F.3d 23, 37 (1st Cir. 2002)).

The First Circuit's holding is entirely consistent with the plain language of the Lanham Act and the guidance from both the Supreme Court of the United States and the Third Circuit Court of Appeals. 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."); Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 206-07 (1942) ("The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark. The burden is the infringer's to prove that his infringement had no cash value in sales made by him."); Banjo Buddies, 399 F.3d at 176 ("Section 35(a) provides that 'in assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all

8

elements of cost or deduction claimed.'  The District Court accepted the Alpern report's figure for total sales of the Bionic Minnow through November 22, 2002.  Thus, Banjo Buddies' burden of proof was satisfied by Renosky's accountant's financial report.").  To whatever extent Gucci, 354 F.3d at 242, departs from those holdings, the Court declines to follow it as it is contradicted by more recent Circuit precedent in Banjo Buddies, 399 F.3d at 176.  Therefore, Defendants' first argument is not grounds for granting summary judgment.

Defendants next claim that the financial statements only show Defendants' income rather than its sales.  Defendants assert that this is an "important distinction" because:

> [B]y far the largest component of Metro Bank's income is interest income, which is divided into interest earned on outstanding loans and interest earned on securities held by Metro Bank.  Since loans are typically multi-year, it is a near-certainty that much of this category of income is from loans issued before Metro Bank began using the Metro M Mark.

(Doc. No. 74-1 at 11.)  For the same reason that Defendants' first argument failed, so too must its second.  The argument attempts to shift the burden from Defendants to Plaintiff to prove what portions of Defendants' sales were not a result of the alleged breach.  Under the Lanham Act the Defendants cannot escape an accounting of profits by responding to discovery requests for "annual revenues for products and/or services provided or sold under the 'Metro Bank' mark since the first date of use of the 'Metro Bank' mark" (Doc. No. 71-2 ¶ 3) by providing financial reports that do not clearly delineate the source of its income.  See, e.g., Banjo Buddies, 399 F.3d at 176; see also Venture Tape, 540 F.3d at 63-64.  Further, the Court notes that even if Plaintiff did bear the burden of distinguishing which interest payments were the result of pre-infringement loans, there is no competent evidence establishing that any of the interest is derived from pre-infringement loans.  The Court is only told that loans are "typically" multi-year, and

therefore it is likely that "much" of the interest income is derived from pre-infringement loans. Summary judgment cannot be granted on such indefinite claims. Finally, even if the Court credited these arguments, they would only call into doubt the interest income. Left unchallenged is non-interest income. Therefore, the Court finds that Defendants' second argument does not serve to eliminate a question of material fact on the issue of Defendants' gross sales.

Finally, Defendants argue that its financial records demonstrate that it suffered a loss, and that therefore, there are no profits to be had. (Doc. No. 74-1 at 12.) As Plaintiff rightly argues, this argument does not foreclose a claim of profits, rather it creates a question of fact for the jury regarding the amount of profits to which Plaintiff is entitled. See Diamond Triumph Auto Glass, Inc. v. Safelite Glass Corp., 441 F. Supp. 2d 695, 717 (M.D. Pa. 2006); see also Banjo Buddies, 399 F.3d at 176 (affirming an award of profits even where the report on which the amount of profits was based concluded that the defendant suffered a $492,699.00 loss). At trial, this evidence may persuade the fact finder that Plaintiff is not entitled to an award of profits; however, it is not sufficient to require summary judgment on the issue.

### IV. CONCLUSION

In conclusion, reconsideration of the Court's order granting summary judgment on the issue of an accounting of profits is warranted in light of Defendants' SEC filings. Because this evidence is sufficient to satisfy Plaintiff's burden to "put up" evidence of record demonstrating a material question of fact regarding an accounting of Defendants' profits, the Court will deny Defendants' motion for summary judgment on that issue. An order consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MEMBERS 1ST FEDERAL CREDIT UNION** | : |
|     Plaintiff, | : Civil Action No. 1:09-cv-1171 |
| v. | : (Chief Judge Kane) |
| **METRO BANK, METRO BANCORP, INC., COMMERCE BANK/HARRISBURG, PENNSYLVANIA COMMERCE BANCORP, INC., REPUBLIC FIRST BANK, and REPUBLIC FIRST BANCORP, INC.,** | : |
|     Defendants | : |

## ORDER

**NOW** on this 21st day of January 2011, upon consideration of Plaintiff's motion for reconsideration (Doc. No. 71), **IT IS HEREBY ORDERED THAT** Plaintiff's motion is **GRANTED**. Defendants' motion for summary judgment (Doc. No. 48) on the issue of an accounting of Defendants' profits under the Lanham Act is **DENIED**.

                                                S/ Yvette Kane
                                                Yvette Kane, Chief Judge
                                                United States District Court
                                                Middle District of Pennsylvania